**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CRIMINAL ACTION NO.** |
| | ) | |
| **Plaintiff,** | ) | **1:24-CR-00009-CJN** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MATTHEW BRACKLEY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MR. BRACKLEY'S SENTENCING MEMORANDUM [CORRECTED]**

Steven H. Levin
Federal Bar No. 28750
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
slevin@steptoe.com
(202) 429-8169


Attorney for Defendant
Matthew Brackley

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS................................................................................................2

INDEX OF EXHIBITS IN SUPPORT OF MR. BRACKLEY ....................................3

SENTENCING MEMORANDUM ...............................................................................4

I. INTRODUCTION ...................................................................................................4

II. MR. BRACKLEY'S BACKGROUND ..................................................................4

    A.    Mr. Brackley's Generosity.....................................................................4

    B.    The Importance of Brackley Electric to the Community.........................6

    C.    Mr. Brackley's Faith and Integrity........................................................7

III. MR. BRACKLEY'S ACTIONS ON JANUARY 6 ..............................................9

IV. GUIDELINES ANALYSIS...................................................................................9

    A.    The History and Characteristics of the Defendant................................10

    B.    The Purpose of Sentencing ...................................................................11

    C.    The Kinds of Sentences Available.........................................................14

    D.    The Sentencing Guidelines ...................................................................16

    E.    The Policy Statements Issued by the Sentencing Commission .............17

    F.    The Need to Avoid Unwarranted Disparities Among Similar Offenders.............17

    G.    The Need to Provide Restitution............................................................25

V. CONCLUSION....................................................................................................26

CERTIFICATE OF SERVICE ................................................................................27

## <u>INDEX OF EXHIBITS IN SUPPORT OF MR. BRACKLEY</u>

| <u>Document Title</u> | <u>Attachment</u> |
|---|---|
| Letter from Sean McLeod (Colleague) | A |
| Letter from Bob Warren (Insurance Agent) | B |
| Letter from Damian Smith (Friend) | C |
| Letter from Dan Desrosiers (Employee) | D |
| Letter from Michael Britt (Pastor) | E |
| Letter from Zechariah & Hannah Allen (Friends) | F |
| Letter from Marcus Rowe (Current Brackley Electric customer, former Manager) | G |
| Letter from Michael Simon (Employee, Friend) | H |
| Letter from Robert & Susan Brackley (Parents) | I |
| Letter from Bryson Hull (Friend) | J |
| Letter from Joshua Anderson (Friend) | K |
| Letter from Mike & Olive Whitney (Pastor, Friends) | L |
| Letter from Brent Sawyer (Realtor, Friend) | M |
| Letter from David Caillavet (Colleague, Friend) | N |
| Letter from Stephen Masison (Friend) | O |
| Letter from Ryan Cowette (Martial Arts Teacher) | P |
| Letter from Stephen ChapmanSilva (Employee) | Q |
| Letter from Ellen Brackley (Wife) | R |
| Video Submission | S |

## SENTENCING MEMORANDUM

Defendant Matthew ("Matt") Brackley respectfully submits this corrected Sentencing Memorandum in order to assist the Court in imposing a sentence in this case that is "sufficient but not greater than necessary to comply with the purposes" of 18 U.S.C. § 3553.

Given that the events of January 6 represent a devastating and unprecedented stain on this country's history, there is much to be said about the events of that day, in general. Nevertheless, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person *as an individual*." *Gall v. United States*, 552 U.S. 38, 52 (2007) (emphasis added). For the reasons that follow, Mr. Brackley's individual characteristics warrant a sentence of six months' intermittent confinement.

## I. INTRODUCTION

A sentence of six months' intermittent confinement is appropriate in this case because: (1) Mr. Brackley's individual characteristics show that he is a uniquely generous person whose conduct on January 6 was an aberration, (2) offenders with conduct similar to Mr. Brackley's were sentenced to around six months and (3) a sentence of six months of intermittent confinement would prevent risk to Mr. Brackley's business, which employs over 60 members of his rural Maine community and elsewhere, and is the sole source of income for many families.

## II. MR. BRACKLEY'S BACKGROUND

Mr. Brackley is a loving father of three, a devoted husband to his wife of nearly 20 years, an employer for more than 60 employees, and a giving and hard-working member of his community and church.

### A.    Mr. Brackley's Generosity

Mr. Brackley's generosity shines through in nearly every single character letter submitted. The letters show that Mr. Brackley has "pour[ed] himself out for his family, church, employees,

and community again and again, often at great cost to his time, energy, and even health." Attachment E ("Britt Letter").  It is obvious that those in his community view Mr. Brackley as a profoundly generous person.  And with good reason.  For example, when Mr. Brackley purchased a home that was in foreclosure for investment purposes, he discovered that the adult daughter of the former owner was living there.  Rather than evict the daughter so that he could begin to make improvements on the home, Mr. Brackley "spent more than six months working with her to move belongings out, find a new home and care for herself" through her drug use and pregnancy. Attachment M ("Sawyer Letter").  Mr. Sawyer notes that, "The neighbors advised him (as did I) that she was difficult and problematic and yet he still gave her a chance, spending his time and money on a person who had lost a parent and a home and was soon to be homeless because he cares."  Sawyer Letter.  This is but one example of Mr. Brackley's generosity:

- Mr. Brackley has provided all manner of financial assistance to employees and community members when situations were difficult, including paying for vehicle repairs, as well as giving generous cash gifts in order to help families struggling through difficult financial times.  *See* Attachment P ("Cowette Letter"); Attachment N ("Caillavet Letter"); Attachment L ("Whitney Letter").

- Mr. Brackley has consistently assisted people in his community with moving, including physical moving and allowing people in the community to use his truck or trailer, sometimes for weeks at a time.  *See* Attachment C ("Smith Letter"); Attachment F ("Allen Letter").

- Mr. Brackley took care of a community member's daughter during COVID when the schools were closed so that her parents could continue to work.  *See* Attachment J ("Hull Letter").

- Mr. Brackley has repeatedly provided community members with homes at significantly reduced rates in order to secure a place to live for their families.  *See* Cowette Letter.

- Mr. Brackley welcomed an injured friend into his family's home and cared for the friend while he recovered from surgery for six weeks.  *See* Attachment O ("Masison Letter").

- Mr. Brackley is a deacon in his church, and "[h]is responsibilities include checking in with our disabled members, single mothers, divorcees, widows, widowers, elderly, and other at risk members of our congregation to make sure they have all they need in terms of housing, food, transportation, and medical care." *See* Attachment R ("Ellen Brackley Letter").

- Mr. Brackley organized and participated in charity events for a colleague who had been diagnosed with Stage 4 breast cancer. *See* Attachment A ("McLeod Letter").

- Mr. Brackley has consistently and generously given to his parents and siblings. *See* Attachment I ("Robert & Susan Brackley Letter").

### B.      The Importance of Brackley Electric to the Community

More than that, Mr. Brackley also uses his business as a vehicle to generously serve his rural Maine community. Mr. Brackley works hard for the success of his small business, Brackley Electric. Brackley Electric is one of the few substantial small businesses that Maine has left, and many families in his rural Maine community and elsewhere depend on Mr. Brackley for their entire income. Over 60 employees rely on Mr. Brackley not only for their regular paycheck and health benefits for themselves and their families, but also the above-and-beyond compassion that Mr. Brackley exhibits as a boss. For example, Mr. Britt notes that, "I have seen him forgive a thieving employee (more than once!) when I thought they should have been fired. I have seen him hire people that no one else would even consider." Britt Letter. Additional examples of Mr. Brackley's compassion include the following:

- Mr. Brackley has paid to maintain employees' health insurance, along with paying their rent, when they were out of work due to a surgery. *See* Attachment H ("Simon Letter").

- Mr. Brackley renovated his basement in order to welcome his assistant and her children into his home when they had nowhere to live. *See* Sawyer Letter. Mr. Brackley also provided his assistant with greater responsibilities and compensation at work so that she could save for a place of their own. *See id.*

- Mr. Brackley provided Dan Desrosiers, a "down and out" member of the community, with a stable, well-paying job and a means of transportation to get to work and, later, prevented

Mr. Desrosiers's house from foreclosure by giving Mr. Desrosiers the funds to hire a lawyer and file for bankruptcy.  *See* Attachment D ("Desrosiers Letter").

- Mr. Brackley offers his employees a free apprenticeship program that allows for a path to a state journeyman's license.  *See* Simon Letter.

- Mr. Brackley has consistently lent his employees company trucks when they are without a car.  *See id.*

- Mr. Brackley mentored a young man in active opiate addiction and provided him with the opportunity to learn the electrical trade, leading to the young man turning his life around. Caillavet Letter.

- Mr. Brackley has consistently provided electrical work for community members at low- or no-cost.  *See* Wilson Letter.

## C.      **Mr. Brackley's Faith and Integrity**

Mr. Brackley's colleagues, neighbors, and friends know that he "is one of the people that makes th[e] community [they] share a better place to live."  Sawyer Letter.  This is true not only because of Mr. Brackley's profound generosity, but because of his deep connection to his Christian faith, as well as his heartfelt sense of integrity.  Mr. Brackley "honor[s] his word," teaches Sunday school, and possesses "a genuine character founded on transparency and accountability."  *See* Sawyer Letter; Smith Letter; Attachment K ("Anderson Letter").

Mr. Brackley's community understands that his acceptance of responsibility for his actions on January 6 is yet another example of his integrity.[1]  While Mr. Brackley "could have opted to

---

[1] The government incorrectly claims that Mr. Brackley "has not actually shown any remorse for his violent conduct on January 6."  Gov't Sentencing Mem. at 14.  And that, "Following his arrest, he gave no indication of regret for his actions, instead telling federal agents that what happened was 'God's plan.'"  *Id.*  The government misinterpreted Mr. Brackley's words.  As part of Mr. Brackley's deep Christian faith, he believes that everything that happens is part of God's plan for the world.  Therefore, when Mr. Brackley stated that everything that followed the events of January 6 was part of God's plan, and that he expected that he would be held responsible, Mr. Brackley meant to convey his own knowledge that his actions on January 6

deceive, minimize, or conceal his involvement" in the events of January 6, he demonstrated integrity by owning up to his role, "without seeking to embellish or justify" his actions. Anderson Letter. Mr. Brackley has expressed remorse and regrets the wrongfulness of the role his actions played on January 6. *See* Caillavet Letter. Mr. Brackley was willing to accept responsibility and plead guilty to these charges from the very first opportunity.[2] According to character letters, Mr. Brackley has "show[n] remorse and humility around his actions." Smith Letter; Caillavet Letter. Mr. Brackley has stated that "he accepts responsibility for his actions because he knows the great rights Americans enjoy under the Constitution" come with the responsibility to uphold and respect "the laws that bless us all." Hull Letter. While Mr. Brackley accepts responsibility for his actions on January 6, they are an aberration in light of the virtuous and giving trajectory of Mr. Brackley's life. Caillavet Letter.

On January 6, Mr. Brackley extended his hands to push two police officers and, for that action, Mr. Brackley should be punished. By all accounts, on all other days of his 40 years (14,779 days), Mr. Brackley has always extended his hands to do good for his community and employees. For all the aforementioned reasons, coupled with Mr. Brackley's acceptance of responsibility, a sentence of six months' intermittent confinement is sufficient but not greater than necessary. This will allow Mr. Brackley to continue to benefit his community by keeping his business running and continuing to "[i]n times of need[,] extend his hand in ways that surpass the bounds of friendship." Cowette Letter.

---

were wrongful, that God did not endorse his actions, and that, as a result, his subsequent arrest was part of God's plan. *Id.*

[2] Undersigned counsel has represented Mr. Brackley since January 2022. Since that time, Mr. Brackley has indicated to the government through counsel of his desire to accept responsibility for his actions. There has never been any indication at all that Mr. Brackley's case would not be resolved in any way other than with a guilty plea.

### III. <u>MR. BRACKLEY'S ACTIONS ON JANUARY 6</u>

In imposing a sentence that is "sufficient but not greater than necessary to comply with the purposes" of 18 U.S.C. § 3553, it is imperative that a distinction be made between Mr. Brackley's conduct on January 6 and the conduct of other rioters.  Mr. Brackley fully accepts responsibility for and deeply regrets his actions on January 6.  On that date, Mr. Brackley unlawfully entered the Capitol and, with both elbows raised, pushed through two Capitol Police officers.  For that, there is no excuse.  Nevertheless, it is relevant to highlight the differences between his wrongful conduct and the conduct of so many others that have appeared before this Court.

Unlike many others at the Capitol that day, Mr. Brackley did not arrive in Washington, D.C. with the intent to enter the Capitol.  Unlike many others, Mr. Brackley did not bring weapons or any other gear indicating that he intended or planned for violence.  Unlike many others that day, Mr. Brackley never made any threatening statements directed towards members of Congress or police officers, whether in person or online.  Unlike many others, Mr. Brackley did not post anything about the events of January 6 on social media.  Unlike many others, Mr. Brackley is not a member of any right-wing extremist group.  Unlike many others, Mr. Brackley did not go beyond the Rotunda and an adjacent hallway.  Unlike many others, Mr. Brackley did not strike or hit any Capitol Police officers and never used a weapon or an object to strike or hit any Capitol Police officers.  Unlike many others, Mr. Brackley did not convert an everyday item into a weapon or use an object such as a bike rack barricade as a weapon.  Unlike many others, Mr. Brackley did not attempt to, and did not, damage any property.  Ultimately, Mr. Brackley is grateful that no one was hurt as a result of his conduct.

### IV. <u>GUIDELINES ANALYSIS</u>

None of Mr. Brackley's conduct on January 6 is defensible.  However, Mr. Brackley must be considered as an individual and sentenced based on his individual conduct, rather than the wide

range of abhorrent conduct that took place on January 6. *Gall v. United States*, 552 U.S. 38, 52 (2007). Mr. Brackley's individual characteristics show that a downward variance is appropriate in this case.

While the Sentencing Guidelines are one of several factors to be considered in determining a "sufficient, but not greater than necessary" sentence, courts may issue a sentence outside the Guidelines in ordinary circumstances. *Gall*, 552 U.S. at 47. As part of a sentencing decision, the Court must consider each of the 18 U.S.C. § 3553(a) factors to "tailor the sentence" to fit the circumstances of the case. *United States v. Booker*, 543 U.S. 220, 245 (2005). The § 3553(a) factors are:

(1) the nature of the offense and history and characteristics of the defendant;

(2) the purpose of sentencing;

(3) the kinds of sentences available;

(4) the Sentencing Guidelines;

(5) the policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted disparities among similar offenders; and

(7) the need to provide restitution to any victims of the offense.

Each of these factors shows that the Court should tailor a sentence to Mr. Brackley's case consisting of six months of intermittent confinement.

### A.      <u>The History and Characteristics of the Defendant</u>

Mr. Brackley is a productive and otherwise law-abiding citizen and treasured member of his community, church, and family. These sentiments and more are captured in the attached letters of support.

Mr. Brackley is also a fiercely protective father of three children—an 18-year-old son and 17-year-old twin daughters—all three of whom live at home with Mr. Brackley and his wife. Mr.

Brackley is an active father and an everyday fixture in his children's lives. As recounted by his parents, Mr. Brackley is "an involved father providing not only for his children's physical well-being but also for their character training, spiritual guidance, personal development, and stability. He actively promotes and provides love, affection, support, guidance, and strength by the example he sets in his home." *See* Robert & Susan Brackley Letter. The character letters also note that Mr. Brackley's "children are at the precipice of making important decisions in life (marriage, career choices, having families of their own etc.) We believe it is crucial that he be there for and with them. It will be devastating to them (and us) to have him gone." *See id.*

As documented in the Presentence Report, Mr. Brackley has no criminal history. Further, Mr. Brackley has expressed regret for his actions in January 6 and there is no likelihood of recidivism. Mr. Brackley is and always has been an active member of his church and has lived out his faith through his community work and business practices.

By all accounts, Mr. Brackley's conduct on January 6 was an extreme aberration. In fact, Mr. Brackley's true character is demonstrated by a video made by a friend of Mr. Brackley's. *See* Attachment S. The video features Mr. Brackley's friends, neighbors, colleagues, employees, and community members, all of whom gathered at Mr. Brackley's home in Maine to vouch for the depth of Mr. Brackley's character and generosity. *See id.* This video, which showcases Mr. Brackley's history and character, demonstrates that a sentence of six months of intermittent confinement is appropriate. *Id.*

### B. The Purpose of Sentencing

Each sentence imposed under the Guidelines should be determined based on the relevant facts and circumstances, and designed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

In this case, a sentence of six months of intermittent confinement is "sufficient but not greater than necessary to comply with the purposes" of 18 U.S.C. § 3553. The criminal information against Mr. Brackley, his guilty plea, and the collateral consequences of these events to himself, his employees, and his family convey the seriousness of, and provide significant punishment for, Mr. Brackley's conduct.

As a result of his conviction, Mr. Brackley and his company are barred from doing all contracting work and subcontracting work over $35,000 for the U.S. Navy, U.S. Coast Guard, National Oceanic and Atmospheric Administration, and the U.S. Army Corps of Engineers. *See* March 20, 2024 letter from U.S. Department of the Navy's Office of General Counsel to Mr. Brackley and Brackley Electric (citing Federal Acquisition Regular (FAR) § 9.407-2(a)(10) and FAR § 9.407-1(c) naming Mr. Brackley and Brackley Electric as suspended contractors in the System for Award Management (SAM)). The fact that Brackley Electric is no longer able to serve these clients has created a significant financial loss for Mr. Brackley, his business, and his employees.[3]

Despite the downstream consequences for his employees through decreased business, a term of intermittent confinement will allow Brackley Electric to continue to operate, providing

---

[3] Over the past four years, contracts supporting these agencies accounted for nearly $10 million in revenue for Brackley Electric, more than 30 percent of the business's overall revenue.

stable employment, generous salaries and health insurance, and a profound sense of security to Mr. Brackley's 60 employees and their families.  A term of intermittent confinement will limit the contagion of collateral consequences from further spread to Mr. Brackley's family and employees, while adequately punishing Mr. Brackley.  During his term of intermittent confinement, Mr. Brackley would report to work Monday through Friday in order to keep his business running. Then, on Friday after work, Mr. Brackley would drive two and a half hours and report for confinement at Federal Correctional Institution (FCI) Berlin in New Hampshire.[4]  Mr. Brackley would remain incarcerated for the duration of his time away from work, and depart the facility early Monday morning in order to report for work by 9 am Monday morning.

Finally, there is no need to protect the public from future crimes because Mr. Brackley has no risk of recidivism.  As noted in the presentence report, Mr. Brackley has zero criminal history points.  For offenders who are rearrested, the median time to arrest was less than two years.  United States Sentencing Commission (U.S.S.C.), *Recidivism of Federal Offenders Released in 2010* at 4 (Sept. 2021) ("*Offenders Released in 2010*").  However, less than five percent of defendants who fall into Mr. Brackley's Criminal History Category sustain a new conviction within two years of release; therefore, Mr. Brackley is unlikely to recidivate.  *See* U.S.S.C., *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* Ex. 3 (May 2004); *see also Offenders Released in 2010* at 24–25 (noting that offenders aged 40 and above have a decreased risk of recidivism).  In addition to having no prior criminal history points, Mr. Brackley has had zero prior contact with the criminal justice system, which is the lowest possible criminal

---

[4] At sentencing, if the Court is inclined to sentence Mr. Brackley to a period of incarceration, we will request that he be designated to FCI Berlin.

history category studied and resulted in the lowest recidivism rate.  *See Offenders Released in 2010* at 28.  Therefore, Mr. Brackley's prior criminal history indicates that he has no risk of recidivism.[5]

### C.     The Kinds of Sentences Available

This Court has the authority and may exercise its discretion to consider a wide range of alternatives to imprisonment. 18 U.S.C. §§ 3553(a)(3) and 3561(a)(1).  In fact, § 3553(a)(3) specifically directs the Court to consider sentences other than imprisonment and the Court should not underestimate the severity of a non-custodial sentence.  The Supreme Court stated in *Gall* that while "custodial sentences are qualitatively more severe than probationary sentences," non-custodial sentences substantially restrict the liberty of offenders.  552 U.S. at 48.  Here, Mr. Brackley's liberty will be even more restricted than a typical non-custodial sentence because, during the week, Mr. Brackley would only be permitted to travel between work and home and, on the weekends, he would be incarcerated.

Mr. Brackley should be punished for his actions on January 6; however, because he is not at risk of recidivism, a sentence of intermittent confinement allows for this Court to punish Mr. Brackley without punishing the innocent community members who depend on him.  Mr. Brackley and his wife built their business in their basement, from the ground up.  *See* Ellen Brackley Letter.

---

[5] While the government claims that Mr. Brackley's statement during arrest that "votes don't mean the same anymore" demonstrates the need to deter the risk of recidivism, this statement was taken out of context. Gov't Sentencing Mem. at 10, 14–15.  Mr. Brackley's statement was made in response to reviewing information presented by a U.S. Deputy Marshal regarding prisoner voting rights.  Mr. Brackley understood that, while felons in Maine never lose the right to vote, his response was that his vote would not mean the same to him anymore after committing an offense against the United States.  Therefore, Mr. Brackley's statement was meant to convey his deep remorse for his actions.  Instead, however, the government has misinterpreted this statement to wrongly conclude that Mr. Brackley believed that, "violence [can] replace the vote" and that "political opinions justify the assaultive behavior he engaged in," when, in reality, Mr. Brackley neither said, nor meant, any such thing.  *See* Gov't Sentencing Mem. at 14–15.  Rather, Mr. Brackley sincerely regrets his behavior and has never believed that violence can replace the vote.

Having started a business from nothing that now employs over 60 electricians and other employees, there is significant concern that the business would not survive a period of Mr. Brackley's incarceration.

Employment fosters human dignity and provides individuals with a sense of belonging and purpose. Mr. Brackley's business has provided stability, purpose, and confidence to "un-hirable" individuals and persons suffering from addiction by believing in them and teaching them a valuable trade. *See* Caillavet Letter; Britt Letter. If Brackley Electric were to go out of business during Mr. Brackley's period of incarceration, these individuals would be out of work, possibly permanently. It is not an overstatement to suggest that sentencing Mr. Brackley to a period of intermittent confinement would likely prevent a ripple effect of addiction and poverty in his rural Maine community and elsewhere.

In prior cases, this Court has taken notice of a defendant's career, as well as the impact that the relevant sentence would have on that career. *See United States v. Elizalde*, 1:23-cr-00170-CJN-1 (sentencing defendant to 30 days of home confinement, which would allow defendant the chance to continue his Naval career "because he has served our nation honorably."). Here, there is more than one way to serve a nation and Mr. Brackley's service provides jobs to 60 residents of rural Maine, Mississippi, Alabama, Texas, and elsewhere.[6]    Mr. Brackley seeks a sentence of intermittent confinement, not so that he can keep his own job, but so that he is there to ensure that his employees keep theirs. As Your Honor will observe from the character letters and video, this is not lip service; Mr. Brackley cares deeply for his employees and their families. *See* Desrosiers Letter (providing employee with funds to hire a lawyer to prevent the employee from being foreclosed upon); Britt Letter (refusing to terminate employees who were caught stealing); Simon

---

[6] Brackley Electric's employees live in rural areas throughout several different states.

Letter (paying an employee's rent and to maintain the employee's health insurance after the employee left work due to a surgery); Sawyer Letter (housing his assistant and her children while they looked for a permanent residence).

Additionally, the Court has sentenced defendants to terms of intermittent confinement in order to prevent them from losing employment, with a particular emphasis on the impact to the individual's dependents.[7]  In *United States v. Brown*, 1:23-CR-00197-BAH, Mr. Brown, who entered the Capitol with his 18-year-old daughter, was the sole breadwinner for his nine children, four of which still live at home.  Ultimately, despite the government's request for 14 days of incarceration, the Court sentenced Mr. Brown to 60 days of intermittent confinement.  Similarly, not only is Mr. Brackley the primary breadwinner for his family of four, but he is responsible for the incomes of livelihoods of *sixty* employees and their families.  Therefore, a term of intermittent confinement is appropriate here.

Sentencing Mr. Brackley to intermittent confinement will allow the Court to punish Mr. Brackley for his actions on January 6 while avoiding collateral consequences, including the possible loss of 60 jobs.

### D.    The Sentencing Guidelines

Based on Mr. Brackley's lack of criminal history and the estimated total offense level of 17 listed in the Presentence Report, Mr. Brackley's estimated sentencing guideline range is 24-30 months imprisonment.  While the Sentencing Guidelines are one of several factors to be considered

---

[7] Administrative Office of the United States Courts, Probation and Pretrial Services Office, *Overview of Probation and Supervised Release Conditions*, *Chapter 3: Intermitten Confinement* at C.3 (Nov. 2016),  https://www.uscourts.gov/services-forms/intermitten-confinement-probation-supervised-release-conditions (noting that one of the purposes of intermittent confinement is to "prevent a defendant from losing employment, or allow a defendant to avoid the complete removal from role of provider or caretaker for dependents and other family members that would result from a traditional term of incarceration.")

in determining a "sufficient, but not greater than necessary" sentence, Courts may issue a sentence outside the Guidelines in ordinary circumstances. *Gall*, 552 U.S. at 47. As part of a sentencing decision, the Court must consider each of the 18 U.S.C. § 3553(a) factors to "tailor the sentence" to fit the circumstances of the case. *United States v. Booker*, 543 U.S. 220, 245 (2005).

While Mr. Brackley's guidelines range is one factor to be considered in determining a "sufficient, but not greater than necessary sentence," all other 18 U.S.C. § 3553(a) factors call for a downward variance to six months of intermittent confinement. When tailoring the sentence to the needs of the case, as *Booker* instructs, Mr. Brackley's unique generosity of spirit, role in his community, and acceptance of remorse show that a downward variance is appropriate in this case. 543 U.S. at 245.

### E.      The Policy Statements Issued by the Sentencing Commission

A sentence of six months' intermittent confinement meets the policy goals of the Sentencing Commission to provide reasonable sentences. In fact, a majority of judges responding to a 2002 Sentencing Commission survey "urged greater availability of probation with confinement conditions, [and] . . . requested that such sentencing options be made either more available or not reduced from their current availability." U.S.S.C., *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 52 (2004).

### F.      The Need to Avoid Unwarranted Disparities Among Similar Offenders

According to recent estimates, there have been approximately 800 federal defendants sentenced as a result of criminal activity associated with January 6, 2021.[8] In light of the high

---

[8] U.S. Attorney's Office for the District of Columbia, "Three Years Since the Jan. 6 Attack on the Capitol" (Jan. 5, 2024), https://www.justice.gov/usao-dc/36-months-jan-6-attack-capitol-0.

volume of January 6 defendants in this District, the need to achieve sentencing uniformity is all the more pressing.  While Mr. Brackley has pled guilty to a felony, Mr. Brackley did not use a weapon and his interaction with the officers in the hallway resulted in neither physical injury nor property damage.[9]  The following defendants had fact patterns somewhat similar to Mr. Brackley. Defendants with conduct similar to, or, in some cases, more serious than, Mr. Brackley's have received sentences of around six months or less.

Defendants with conduct substantially similar to Mr. Brackley's have received sentences of six months.  In *Leffingwell*, a January 6 defendant was sentenced to six months' incarceration for punching two Capitol Police officers in violation of 18 U.S.C. § 111(a)(1).  *See United States v. Leffingwell*, 1:21-CR-00005-ABJ (D.D.C. 2022).  The conduct that resulted in this six-month sentence is nearly identical—if not more serious than—Mr. Brackley's push through the two Capitol Police officers.  Just like Mr. Brackley, Mr. Leffingwell had an estimated Criminal History Category of I and an estimated guidelines range of 24 to 30 months imprisonment.  *Leffingwell* Def.'s Sentencing Mem. (ECF 47-1) at 3.  Mr. Brackley and Mr. Leffingwell also have identical history and characteristics.  Similar to Mr. Leffingwell, a father of two, who took responsibility for his actions, Mr. Brackley is a father of three and accepts responsibility for letting his family down.  *Id.* at 9.  Just as the Court sentenced Mr. Leffingwell to six months for punching two police officers, Mr. Brackley should be sentenced to six months of intermittent confinement for pushing two police officers.

---

[9] It is worth noting that defendants who received lengthy sentences for assault caused physical harm to the officer.  For example, in *United States v. Easterday*, the defendant was sentenced to 30 months for spraying a chemical irritant the eyes of two separate police officers, causing excruciating pain and partial blindness for hours.  *See* 1:22-CR-000404-JEB, Gov't Sentencing Mem. (ECF 115) at 2.  Mr. Brackley understands that the officers on duty that day with whom he interacted likely suffered a degree of stress-related psychological injury for which, again, he offers his sympathies and apologies, and no excuse.

In some cases, conduct more severe than Mr. Brackley's has warranted a sentence of less than six months.  For example, in *Blair*, a January 6 defendant was sentenced to five months' incarceration for striking a Metropolitan Police Department ("MPD") officer with a lacrosse stick in violation of 18 U.S.C. § 231(a)(3).  *See United States v. Blair*, 1:21-CR-186-CRC (D.D.C. 2022).  Mr. Blair pled guilty and had an estimated guidelines range of eight to 14 months of imprisonment.  *See id.* Def. Sentencing Mem. (ECF 57) at 9.  Unlike Mr. Blair, who used a Confederate flag attached to a lacrosse stick as a weapon in order to strike an officer, Mr. Brackley did not use any weapons, nor did he ever carry any objects to use as weapons on January 6.  *Id.* at 2.  Therefore, Mr. Brackley's conduct was less severe than Mr. Blair's, and so a sentence of six months to be served through intermittent confinement is more than appropriate for Mr. Brackley, especially when viewed in light of Mr. Blair's five-month sentence.

Furthermore, defendants with conduct more severe than Mr. Brackley's have also received sentences of less than a month.  In *Rukstales*, a January 6 defendant was sentenced to 30 days' incarceration for throwing a chair in the direction of Capitol Police officers and resisting arrest in violation of 40 U.S.C. § 5104(e)(2)(G).  *See United States v. Rukstales*, 1:21-CR-41-CJN-5 (D.D.C. 2022), Gov't Sentencing Mem. (ECF 121-1) at 2–3.  Although Mr. Rukstales was convicted of a misdemeanor, his conduct was more severe than Mr. Brackley's.  Mr. Rukstales threw a chair at Capitol Police officers and, if Mr. Rukstales had a better shot, he could have seriously wounded multiple Capitol Police officers.  *Id.*  In contrast, a push, while inexcusable, is not physically injurious.  The fact that Mr. Rukstales was sentenced to 30 days incarceration for throwing a chair shows that a sentence of six months of intermittent confinement is appropriate for Mr. Brackley's pushing two Capitol Police officers.

In some cases, conduct more severe that Mr. Brackley's resulted in sentences of only slightly longer than six months, showing that a sentence of six months intermittent confinement is proportionally appropriate. In *Mostofsky*, a January 6 defendant was sentenced to eight months' incarceration for initiating the breach of a bike rack police barrier by propelling his body weight against the rack (along with scores of other rioters) and departing the Capitol wearing a Capitol Police officer's bulletproof vest and riot shield in violation of 18 U.S.C. § 641, among other charges. *See United States v. Mostofsky*, 1:21-CR-00138-JEB (D.D.C. 2023), Gov't Sentencing Mem. (ECF 100) at 2, 16, 24. Mr. Mostofsky pushed a bike rack against police officers and stole from them—both of which were far more egregious conduct than elbowing one's way through two officers. *Id.*. While Mr. Brackley's conduct is inexcusable and warrants punishment, a six-month period of intermittent confinement is appropriate when compared with Mr. Mostofsky's eight-month sentence. While Mr. Mostofsky's Guidelines range was 12 to 18 months incarceration, slightly lower than Mr. Brackley, Mr. Mostofsky had numerous character letters attesting to his giving and generous spirit. *Id.* at 19; *Mostofsky* Def.'s Sentencing Mem. (ECF 101) at 6–7.[10] Just as the Court likely took these factors into account when sentencing Mr. Mostofsky to a variance, so too can this Court sentence Mr. Brackley to a period of six months of intermittent confinement based on his outsized role in his community.

Similarly, in *Young*, the defendant was sentenced to eight months' incarceration for a violation of 18 U.S.C. § 111(a)(1), along with three other felony charges. *See United States v. Young*, No. 1:21-CR-00617-DLF (D.D.C. 2023). Mr. Young, along with a coordinated crowd of other rioters, lifted and pushed a metal bicycle rack barricade into a wall of officers. *Id.*, Gov't

---

[10] While there was some dispute in *Mostofsky*, the defendant's Guidelines range was either 10 to 16 months or 12 to 18 months. *See Mostofsky* Def.'s Sentencing Mem. at 10 – 11.

Sentencing Mem., ECF No. 35.   Roughly 30 minutes later, Mr. Young, along with another coordinated effort from other rioters, pushed a barricade against a line of police officers.   *Id.*   At that point, after being told by law enforcement to back up and being pepper sprayed, Mr. Young let the air out of the tire of a government vehicle.   *Id.* at 8.   Mr. Young, who never expressed remorse for any of his conduct, was sentenced to eight months for those three distinct incidents, which encompass four felony charges.   *Id.* at 23.   In contrast, Mr. Brackley has expressed remorse for his singular push through two Capitol police officers, which he deeply regrets.[11]   Mr. Brackley, unlike Mr. Young, never used an object as a weapon and, after pushing through the officers, Mr. Brackley did not engage in any other violence or sabotage towards the police.   Therefore, especially when viewed in light of Mr. Young's conduct and eight-month sentence, a sentence of six months of intermittent confinement for Mr. Brackley would allow this Court to avoid unwarranted disparities among similar offenders.

In contrast to the conduct of these five offenders, all of which was similar to Mr. Brackley's conduct, offenders with much more serious conduct than Mr. Brackley's are sentenced within or near his guidelines range of 24 to 30 months.   Therefore, a sentence within Mr. Brackley's guidelines range for pushing two police officers would create unwarranted sentencing disparities when compared to the following conduct.

In *Miller*, the defendant, who was sentenced to 38 months incarceration, took rope, a grappling hook, a mouth guard, and a bump cap with him from Texas to Washington, D.C. in

---

[11]Many defendants have no such regrets. *See, e.g., United States v. Gietzen*, 1:22-CR-00116-CJN (sentencing defendant to six years of imprisonment for striking an officer with a pole and after defendant stated at sentencing, "I have to make it explicitly known that I believe I did the right thing."); Michael Kunzelman, *North Carolina man sentenced to six years in prison for attacking police with pole at Capitol*, AP News (Apr. 23, 2024, 5:27 PM), https://apnews.com/article/david-gietzen-fugitive-capitol-riot-sentence-b9437f4a4e2d6464f4b89c4523367d02.

preparation for January 6.  *See United States v. Miller*, 1:21-CR-00119-CJN (D.D.C. 2023), Gov't
Sentencing Mem. (ECF 141) at 2.  Mr. Miller also stated that he "look[ed] forward to fighting"
and had "[b]een prepping, testing, training, etc.  I'm ready."  *See id.* at 9.  For his conduct, which
included (1) physically assaulting six police officers, (2) breaking through numerous police lines
and barriers, and (3) threatening to assassinate Congresswoman Ocasio-Cortez and hang the officer
who shot Ashli Babbitt, Mr. Miller ultimately faced eight felony charges, including 18 U.S.C.
§ 111(a)(1).  *See id.* at 2.[12]  In stark contrast, Mr. Brackley did not prepare, train, bring fighting
gear, or in any way anticipate a conflict at the Capitol when he attended the "Stop the Steal" rally
on January 6.  Mr. Brackley was not detained and never threatened the lives of any elected officials
or police officers.  Because of the chasm between the heinous conduct involved in *Miller* and Mr.
Brackley's push through two police officers, this Court can avoid sentencing disparities by
sentencing Mr. Brackley to a variance well below his guidelines range of 24 to 36 months, to show
that Mr. Brackley's conduct pales in comparison to the conduct that warranted Mr. Miller's 38-
month sentence.

     Like in *Miller*, other defendants' lengthier sentences also resulted from conduct more
severe than Mr. Brackley's.  In *Williams*, the defendant was sentenced to 36 months for organizing
and coordinating rioters in the Capitol by directing men wearing tactical gear and helmets and
using them as "human battering rams" to successfully breach the Capitol, and breaking into
Speaker Pelosi's office and stealing her hard drive.  *See United States v. Williams*, 1:21-CR-00618-
ABJ (D.D.C. 2023), Gov't Sentencing Mem. (ECF 139).  Not only did Ms. Williams engage in
this conduct during January 6, in the weeks that followed, she destroyed troves of data containing
incriminating information and quit her job to "lay low" and avoid arrest.  *Id.* at 21.  After a jury

---

[12] This conduct also resulted in Mr. Miller being detained *twice* on January 6.  *Id.*

trial, Ms. Williams was convicted of six offenses, including 18 U.S.C. § 111(a)(1).  *See id.*  In contrast to Ms. Williams, Mr. Brackley did not ransack any congressional offices, steal any private property, or attempt to evade arrest in any way.[13]  In fact, just the opposite; Mr. Brackley has sought to plead guilty and cooperate with law enforcement as early as January 2022.  The sharp distinctions between Ms. Williams's conduct and Mr. Brackley's conduct crystallizes an appropriate sentence for Mr. Brackley.  While Mr. Brackley did push through two police officers, Ms. Williams ransacked Speaker Pelosi's office, stole government property, and used other rioters as human battering rams.  If Ms. Williams's conduct warrants a 36-month sentence, Mr. Brackley's cannot warrant 28 months.

In *Dennis*, the defendant was sentenced to 36 months' incarceration for a violation of 18 U.S.C. § 111(a)(1), along with three other felony charges.  *See United States v. Dennis*, 1:21-CR-00679-JEB (D.D.C. 2023).  Mr. Dennis grabbed an MPD officer's baton, unprovoked, and wrestled another officer to the ground after grabbing that officer by the neck.  *Id.*, Gov't Sentencing Mem. (ECF 69) at 2, 7.  More than six MPD officers were required to restrain and arrest Dennis as he kicked, fought, and resisted arrest.  *Id.*  This repeated, violent, targeted, and injurious conduct lies in stark contrast to Mr. Brackley's push through two officers.  In addition, while Mr. Dennis grabbed an officer's baton to use as a weapon, Mr. Brackley never carried or used a weapon at any point during January 6.  Therefore, because Mr. Dennis received 36 months for grabbing an MPD officer's baton and throwing another officer to the ground by the neck, sentencing Mr. Brackley

---

[13] Mr. Brackley did make statements during his arrest, he does not deny that he made those statements.  However, Mr. Brackley made those statements because, since January 2021, Mr. Brackley's counsel had been informing the government during numerous conversations that Mr. Brackley's intent was to plead guilty.  It was disappointing and surprising that rather than being permitted to self-surrender, agents pulled Mr. Brackley over near his home at the crack of dawn with guns drawn, arrested him, and transported him to Portland, Maine in handcuffs and shackles.

to a 28-month sentence for his far less egregious conduct would create unwarranted sentencing disparities.

Similarly, defendants who have received sentences near the government's recommended 28-month range for a violation of 18 U.S.C. § 111(a)(1) have either used weapons or engaged in multiple assaults against officers over the course of January 6, not to mention lack Mr. Brackley's mitigating factors.

First, although the government claims that "Brackley's conduct was worse [than Creek's], and warrants a more severe sentence," Mr. Creek brought a knife and mace, pushed a police officer and hit him in the head. *See* Gov't Sentencing Mem.; *United States v. Creek*, 1:21-CR-645-DLF (D.D.C. 2022), Gov't Sentencing Mem. (ECF 48) at 13–15.  Already, Mr. Creek's conduct is more severe than Mr. Brackley's because, not only did Mr. Creek bring weapons – suggesting a plan to enter the Capitol earlier in the day –  but, following his push, Mr. Creek also hit a police officer in the head.  Shortly thereafter, Mr. Creek rushed to an officer protecting himself behind a riot shield and shoved and kicked the officer, causing him to fall to the ground. *See Creek* Gov't Sentencing Mem. at 16.  Even still, Mr. Creek also picked up a weapon off the ground, a ratchet strap with heavy metal buckles, and threw it at the officers. *Id.* at 17.  This conduct, which resulted in a 27-month sentence, is plainly more severe than Mr. Brackley's singular push through two officers. Furthermore, Mr. Brackley never carried, nor used, a weapon.

Second, while the government argues that in *United States v. Phipps*, the "the Court sentenced [Phipps] to 27 months' incarceration . . . for conduct somewhat less severe than Brackley's," comparing the facts of each case shows that Mr. Phipps's conduct was more severe than Mr. Brackley's, and that a lesser sentence for Mr. Brackley is warranted.  Gov't Sentencing Mem. at 17.  Mr. Phipps's conduct is as follows: in the lead up to January 6, Mr. Phipps made

Facebook posts including "By Bullet or Ballot restoration of the Republic is Coming" and calling on "Patriots to rally up in DC," along with a meme of a noose with the caption "Government Repair Kit"; during the riot, Mr. Phipps assaulted three separate police officers in three separate attacks separated by a few minutes; and, following the attack, boasted about his participation. *United States v. Phipps*, 1:21-CR-00044-CJN (D.D.C. 2024), Gov't Sentencing Mem. (ECF 61) at 6–7, 11, 18.  Mr. Brackley's singular push through two officers, coupled with his lack of social media postings, shows that Mr. Brackley's conduct was far less severe than Mr. Phipps's and, therefore, a lesser sentence for Mr. Brackley would prevent unwarranted sentencing disparities.

Mr. Brackley is being sentenced for a singular violation of 18 U.S.C. § 111(a)(1) resulting from his push through two police officers.  Mr. Brackley never posted on social media, nor used or carried a weapon in relation to January 6.  A sentence of six months of intermittent confinement is appropriate for this singular violation of 18 U.S.C. § 111(a)(1) because a six-month sentence aligns with the sentences imposed upon other January 6 defendants whose conduct was similar to Mr. Brackley's; whereas a sentence of greater than six months aligns with conduct much more serious than Mr. Brackley's, which includes  assassination threats, slamming an officer to the ground by the neck, using weapons, and employing other rioters as "human battering rams." Therefore, a sentence of six months of intermittent confinement would be appropriate to avoid unwarranted sentencing disparities.

### G.   The Need to Provide Restitution

Mr. Brackley is eager to pay his share ($2,000) of the restitution necessary to repair the damages inflicted upon the Capitol on January 6.

# V. <u>CONCLUSION</u>

For all of the reasons described herein, Mr. Brackley respectfully requests that this Honorable Court impose a sentence of six months' intermittent confinement.

Respectfully submitted,

_____

Steven H. Levin (Federal Bar No. 28750)
Steptoe LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-8169

**<u>CERTIFICATE OF SERVICE</u>**

I, Steven H. Levin, certify that on May 13, 2024, I caused a copy of the above document to be served via electronic filing on all counsel of record:

_____
Steven H. Levin